# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## (SOUTHERN DIVISION)

| | |
|---|---|
| ROBERTO HUITRON-GONZALEZ<br>12801 Beaverdale Lane<br>Bowie, MD 20715<br><br>RAFAEL HUITRON-GONZALEZ<br>2413 Kelford Lane<br>Bowie, MD 20719<br><br>    *Plaintiffs*,<br><br>    v.<br><br>TULIP GROVE LANDSCAPING LLC<br>12415 Stirrup Lane<br>Bowie Maryland 20715<br><br>SERVE: RONALD K. LOVETT<br>          12415 Stirrup Lane<br>          Bowie Maryland 20715<br><br>RONALD K. LOVETT<br>12415 Stirrup Lane<br>Bowie Maryland 20715<br><br>    *Defendants*. | Civil Action No.: 22-616 |

## COMPLAINT

Plaintiffs, Roberto Huitron-Gonzalez ("Plaintiff Roberto") and Rafael Huitron-Gonzalez ("Plaintiff Rafael") bring this action against Defendants, Tulip Grove Landscaping LLC ("TGL") and Ronald K. Lovett ("Lovett"), its President and owner, (collectively the "Defendants"), for violations of Plaintiffs' rights under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Labor & Empl. Art. §§ 3-415 and 3-

427; the Maryland Wage Payment and Collection Law ("MWPCL"), Labor & Empl. Art., §§ 3-505 and 3-507.2.

In support, Plaintiffs allege as follows:

## THE PARTIES

1. Plaintiff Roberto is an adult resident of Prince George's County, Maryland and was employed by Defendants from approximately 2003 to January 31, 2022, when Defendants terminated his employment. At all times relevant to the Complaint, Plaintiff Roberto performed manual labor on landscaping jobs for and on behalf of Defendants, including but not limited to mowing, weeding, trimming, leaf removal, snow removal and mulching. Plaintiff Roberto performed this work in Maryland and to some extent in the District of Columbia. During the time he was employed by Defendants, Plaintiff Roberto was paid on a salary basis.

2. Plaintiff Rafael is an adult resident of Prince George's County, Maryland and was employed by Defendants from approximately 2004 or 2005 to January 31, 2022, when Defendants terminated his employment. At all times relevant to the Complaint, Plaintiff Rafael performed manual labor on landscaping jobs for and on behalf of Defendants, including but not limited to mowing, weeding, trimming, leaf removal, snow removal and mulching. Plaintiff Rafael performed this work in Maryland and the District of Columbia. During the time encompassed by the Complaint, Plaintiff Rafael was employed by Defendants and paid on an hourly basis.

3. TGL is a limited liability company organized under the laws of the State of Maryland. TGL is Plaintiffs' "employer" as that term is defined within the FLSA, the MWHL and the MWPCL, because, through its agents, owners, officers and/or members, it employed the Plaintiffs directly, hired them, set their rate of pay, set the terms and conditions of their employment,

set their schedule, directed them in the performance of their work, assigned their work, maintained employment records for Plaintiffs and paid their wages.

3. Lovett is an owner, officer, and/or member of TGL. Lovett is an employer of Plaintiffs within the meaning of the FLSA, the MWHL, and the MWPCL because he is an owner, officer, and/or member of TGL, who is significantly involved in TGL's business operations. Specifically, (1) he is responsible for creating and enforcing TGL's policies and procedures governing employee pay and benefits, (2) he controls the corporate funds which were used to pay Plaintiffs and other employees and he could and did allocate funds as profits for his own benefit, (3) he set and approved the hourly rate for Plaintiffs and other employees who are non-exempt and acted with knowledge of or approved the unlawful pay practices, (4) he had authority to hire, fire and discipline Plaintiffs and he both hired and fired them, (5) he supervised Plaintiffs, established their work schedules and directed them to the various job sites where they worked; (6) he made or approved the decision to engage in the illegal pay practices that are the subject of this lawsuit in order to make TGL more profitable, and (7) he maintained Plaintiffs' employment records in his home where the TGL corporate offices were located.

4. TGL constitutes an "Enterprise Engaged in Commerce" within the meaning of 29 U.S.C. § 203 (s)(1), as TGL had: (1) employees engaged in commerce or the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce; and (2) a gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

5. In addition, Plaintiffs were also engaged in commerce during the relevant period. As used in this Complaint, the term "relevant period" means three years and two weeks prior to the

filing of the complaint. During the relevant period, Plaintiffs performed work in District of Columbia and crossed state lines to perform that work. During the relevant period, Plaintiffs crossed state lines with the company truck approximately twice per week.

## JURISDICTION

6. The jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 217. The Court has subject matter jurisdiction under § 1331 because Plaintiffs' claims involve federal questions and the Court has pendant jurisdiction over the Plaintiffs' state law claim under 28 U.S.C. § 1367.

7. This Court has *in personam* jurisdiction over Defendants because they conduct business in the State of Maryland, their corporate headquarters are located in Maryland, they perform landscaping services in Maryland and many of the events giving rise to these claims occurred in Maryland.

## STATEMENT OF FACTS

8. The relevant period begins three years and two weeks prior to the filing of the complaint in this case and ends on January 31, 2022.

9. First, each year from January 1 through approximately February 6 or 7, Plaintiffs participated in snow removal and leaf removal, but worked less than 40 hours per week. In addition, during this time frame, Plaintiffs were paid for all of their time.

10. While employed by Defendants, Plaintiffs' duties included, but were not limited to manual labor on landscaping projects such as mowing, collecting and blowing leaves, snow removal, weeding and mulching, repairing and maintaining equipment and driving the vehicles used to transport the equipment.

11. Defendants had no formal time-keeping system and although Defendants were aware that Plaintiffs were working significantly more than 40 hours per week, they did not keep track of Plaintiffs' working time.

12. During the relevant period, Plaintiff Rafael's workday would begin at 8:00 a.m. when he arrived at Defendants' shop. Immediately upon arriving at the shop, Plaintiff Rafael would load the movers and blowers and other equipment into the truck and then would drive to the first job site of the day. Plaintiff Rafael often left the last job site of the day at 4:00 p.m., but during the relevant period, he left the job site as early as 3:30 and as late as 6:00 p.m. He would then travel back to the shop where he would spend 30-40 minutes unloading the equipment from the trucks. Plaintiff Rafael's workday ended when he left the shop. On average he would leave the shop at 6:30 p.m. two days per week; he would leave the shop at 7:30 p.m. two days per week; and one day per week he would leave the shop at 5:00 p.m. Plaintiff Rafael also worked 1 to 2 Saturdays per month during the relevant period. On Saturdays, he typically arrived at the shop at 8:00 a.m. and typically left the shop by 3:30 p.m. or 4:00 p.m. and sometimes later. Plaintiff Rafael estimates that during the relevant period he typically took a 30-minute lunch break about three of his workdays per week. He estimates that during the relevant period he worked an average of 55 hours per week.

13. During the relevant period, Defendants paid Plaintiff Rafael on an hourly basis. For example, in 2019, Plaintiff Rafael's hourly rate was $14.50 per hour. In 2020, Defendants increased Plaintiff Rafael's hourly rate to $15.25 per hour and in 2021, Defendants increased it to $15.50 per hour.

14. However, during the relevant period, Defendants only paid Plaintiff Rafael for a fraction of his work hours. For example, during the pay period of August 10, 2019 to August 23, 2019, Plaintiff Rafael was paid for 32 hours of work during the pay period, and received a wage of

approximately $4.22 per hour; during the pay periods of October 19 to November 1, 2019, May 16 to May 29, 2020 he was paid for 40 hours of work during the pay periods and received an hourly wage of $5.27 per hour. These rates were well below minimum wage. For example, during the relevant period, the minimum wage was as follows: July 1, 2018 to December 31, 2019 ($10.10 per hour); January 1, 2020 to December 31, 2020 ($11.00 per hour); January 1, 2021 to December 31, 2021 ($11.75 per hour). Defendants also failed to pay Plaintiff Rafael any overtime premium for his overtime hours.

15. During the relevant period, Plaintiff Roberto's workday would begin at 8:00 a.m. when he arrived at Defendants' shop. Immediately upon arriving at the shop, Plaintiff Roberto would load the movers and blowers and other equipment into the truck and then would drive to the first job site of the day. Plaintiff Roberto often left the last job site of the day at 4:00 p.m., but during the relevant period, he left the job site as early as 3:30 and as late as 6:00 p.m. He would then travel back to the shop where he would spend 30-40 minutes unloading the equipment from the trucks. Approximately 2-3 days per week, after the equipment was unloaded, Plaintiff Roberto would spend between 1-2 hours performing maintenance functions the equipment or repairing it. Plaintiff Roberto's workday ended when he left the shop. On average he would leave the shop at 6:30 p.m. two days per week; he would leave the shop at 7:30 p.m. two days per week; and one day per week he would leave the shop at 5:00 p.m. In addition, approximately two to three days per week, after unloading the equipment.

16. Plaintiff Roberto also worked 1 to 2 Saturdays per month during the relevant period. On Saturdays, he typically arrived at the shop at 8:00 a.m. and typically left the shop by 3:30 p.m. or 4:00 p.m. and sometimes later. Plaintiff Roberto estimates that during the relevant period he

typically took a 30-minute lunch break about three of his workdays per week. He estimates that during the relevant period he worked an average of 60 hours per week.

17. During the relevant period, Defendants paid Plaintiff Roberto on a salary basis and failed to pay him an overtime premium for his overtime hours.

## COUNT I
## VIOLATIONS OF THE FLSA
## 29 U.S.C. §§ 201 – 216 (b)

18. Plaintiffs repeat and incorporate by reference all allegations of fact set forth above.

19. At all times relevant to this Complaint, Defendants were Plaintiffs' "employers" within the meaning of the FLSA.

20. At all times relevant to this Complaint, Plaintiffs were "employees" of the Defendants within the meaning of the FLSA.

21. Defendants violated the FLSA with respect to Plaintiff Rafael by failing to pay him his applicable minimum wages ($7.25 per hour), an overtime premium for overtime hours and failing to pay him anything at all for most of his hours of work.

22. Defendants violated the MWHL with respect to Plaintiff Roberto by failing to pay him an overtime premium for his overtime hours.

23. Defendants' actions were not undertaken in good faith or with a reasonable belief that they were lawful and they were willful such that the statute of limitations is three years.

24. Plaintiffs are not able to calculate their damages because they are not in possession of all pertinent records.

25. Defendants are liable to Plaintiffs under 29 U.S.C. § 216 (b), for unpaid, and illegally withheld straight time and overtime time wages, an additional equal amount as liquidated damages, court costs, attorneys' fees, and any other relief deemed appropriate by the Court.


typically took a 30-minute lunch break about three of his workdays per week. He estimates that during the relevant period he worked an average of 60 hours per week.

17. During the relevant period, Defendants paid Plaintiff Roberto on a salary basis and failed to pay him an overtime premium for his overtime hours.

## COUNT I
## VIOLATIONS OF THE FLSA
## 29 U.S.C. §§ 201 – 216 (b)

18. Plaintiffs repeat and incorporate by reference all allegations of fact set forth above.

19. At all times relevant to this Complaint, Defendants were Plaintiffs' "employers" within the meaning of the FLSA.

20. At all times relevant to this Complaint, Plaintiffs were "employees" of the Defendants within the meaning of the FLSA.

21. Defendants violated the FLSA with respect to Plaintiff Rafael by failing to pay him his applicable minimum wages ($7.25 per hour), an overtime premium for overtime hours and failing to pay him anything at all for most of his hours of work.

22. Defendants violated the MWHL with respect to Plaintiff Roberto by failing to pay him an overtime premium for his overtime hours.

23. Defendants' actions were not undertaken in good faith or with a reasonable belief that they were lawful and they were willful such that the statute of limitations is three years.

24. Plaintiffs are not able to calculate their damages because they are not in possession of all pertinent records.

25. Defendants are liable to Plaintiffs under 29 U.S.C. § 216 (b), for unpaid, and illegally withheld straight time and overtime time wages, an additional equal amount as liquidated damages, court costs, attorneys' fees, and any other relief deemed appropriate by the Court.

26. For this Count, Plaintiffs are seeking wages and damages back three years prior to the date the complaint was filed.

## COUNT II
## VIOLATIONS OF THE MWHL

27. Plaintiffs repeat and incorporate by reference all allegations of fact set forth above.

28. At all times relevant to this Complaint, Defendants were "employers" of Plaintiffs within the meaning of the MWHL.

29. At all times relevant to this Complaint, Plaintiffs were "employees" of the Defendants within the meaning of the MWHL.

30. Defendants violated the MWHL with respect to Plaintiff Rafael by failing to pay him his applicable minimum wages, an overtime premium for overtime hours and failing to pay him anything at all for most of his hours of work.

31. Defendants violated the MWHL with respect to Plaintiff Roberto by failing to pay him an overtime premium for his overtime hours.

32. Defendants did not act in good faith or with a reasonable belief that their actions were lawful, entitling Plaintiffs to liquidated damages.

33. Plaintiffs are not able to calculate their damages because they are not in possession of all pertinent records.

34. As a result, Defendants are liable to Plaintiffs pursuant to the MWHL for their unpaid and illegally wages for the statutory period, an additional equal amount as liquidated damages, court costs, attorneys' fees, and any other relief deemed appropriate by the Court.

35. For this Count, Plaintiffs is seeking wages and damages back three years and two weeks prior to the date the complaint was filed.

## COUNT III
## VIOLATIONS OF THE MWPCL

36. Plaintiffs repeat and incorporate by reference all allegations set forth above.

37. With respect to Plaintiff Rafael, Defendants knowingly, willfully and intentionally violated his rights by failing to pay him his applicable minimum wages, an overtime premium for overtime hours and failing to pay him anything at all for most of his hours of work.

38. With respect to Plaintiff Roberto, Defendants violated the MWHL by failing to pay him an overtime premium for his overtime hours.

39. Defendants' unlawful failure or refusal to pay the required wages was not the result of a *bona fide* dispute within the meaning of the MWPCL.

40. Plaintiffs are not able to calculate their damages because they are not in possession of all pertinent records.

41. Defendants are liable to Plaintiffs pursuant to the MWPCL for the unpaid wages, an additional amount equal to double the unpaid wages as liquidated damages, litigation costs, attorneys' fees, and any other relief deemed appropriate by the Court.

42. For this Count, Plaintiffs is seeking wages and damages back to three years and two weeks prior to the date the complaint was filed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests that this Court grant them the following relief:

a) enter a judgment against Defendants, jointly and severally, and in favor of Plaintiffs in the amount of their unpaid and illegally withheld wages, plus an equivalent amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

b) enter a judgment against Defendants, jointly and severally, and in favor of Plaintiffs, based on Defendants' violations of the MWHL, in the amount of Plaintiffs' unpaid wages, along with an equivalent sum as liquidated damages;

c) enter a judgment against Defendants, jointly and severally, and in favor of Plaintiffs, based on Defendants' violations of the MWPCL, in the amount of Plaintiffs' unpaid wages and an equivalent sum equal to two times the unpaid wages, as liquidated damages;

d) enter judgment for the Plaintiffs in the amount of their costs and reasonable attorneys' fees incurred in this action, as provided in 29 U.S.C. § 216 (b) and Md. Code Ann., Labor & Empl. §§ 3-427 (a) and 3-507.2.

Respectfully submitted,

/s/Omar Vincent Melehy
Omar Vincent Melehy, MD Bar No.: 05712
MELEHY & ASSOCIATES LLC
8403 Colesville Road, Suite 610
Silver Spring, MD 20910
Tel: (301) 587-6364
Fax: (301) 587-6308
Email: ovmelehy@melehylaw.com
*Attorneys for Plaintiffs*